UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALPHONSO DIXON,<br> Plaintiff | ) Civ. No. _____<br>)<br>) |
| vs. | ) COMPLAINT<br>) |
| INTER-CON SECURITY SYSTEMS, INC.,<br>AND MATTHEW WHITAKER, in his<br>official capacity as Acting Attorney<br>General of the United States,<br> Defendants | )<br>)<br>)<br>)<br>) Jury Trial Demanded<br>) |

Plaintiff Alphonso Dixon, by his attorneys Eisenberg & Schnell LLP, John Griffin, Jr. and Katherine L. Butler, as and for his complaint against Inter-Con Security Systems, Inc., and Matthew Whitaker, alleges as follows:

## NATURE OF THE ACTION

1. Had Alphonso Dixon been judged on the quality of his work, rather than defendants' erroneous perception of the impact of his color vision, he would still be serving as a Special Security Officer in the Brooklyn federal courthouse of the Eastern District of New York. However, even though he performed his job as a Special Security Officer with distinction, he lost that job because of disability discrimination. The government utilized unlawful medical examinations and suspended him from his job, while Inter-Con went one step further and actually fired him.

## JURISDICTION AND VENUE

2. This case is brought under the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. and the Rehabilitation Act of 1973, 29 U.S.C. §791 et seq. This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.

3. Plaintiff has exhausted his administrative remedies and complied with statutory prerequisites. He filed a complaint with the EEOC to challenge the discrimination he faced from Inter-Con. He also filed a federal EEO complaint to challenge the United States Marshals Service's disability discrimination. Plaintiff timely files this lawsuit to vindicate his rights.

4. This case is also brought under the New York City Human Rights Law ("NYCHRL" or "City Law"), prohibiting discrimination based on disability. This Court has supplemental jurisdiction of Plaintiff's claims under the NYCHRL, Administrative Code of the City of New York §§8-101 et seq), pursuant to 28 U.S.C. §1367(a).

5. Pursuant to §8-502(c) of the City Law, plaintiff will serve this Complaint on the New York City Commission on Human Rights and on the City of New York Corporation Counsel.

6. Mr. Dixon was working in the Federal Courthouse in Brooklyn, New York, and would have continued to work there if he had not been wrongfully terminated. Venue is invoked pursuant to 28 U.S.C. §1391.

## PARTIES

7. Plaintiff Alphonso Dixon is an adult resident of Jamaica, Queens County, New York.

8. Defendant Inter-Con Security Systems, Inc. is a California corporation located at 210 S. De Lacey Ave., Pasadena, California 91105. Inter-Con is licensed to do business in New York State and does business in New York State.

9. The defendant Matthew Whitaker is currently the Acting United States Attorney General and may be served with process at his business address, Office of the Attorney General, Department of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C. 20530-0001. A copy of this complaint is also served on the United States Attorney for the Eastern District of New York.

STATEMENT OF FACTS

10. Plaintiff Alphonso Dixon, is well qualified to protect members of the federal judiciary, other federal personnel, and the public. He served in the military and has worked successfully in law enforcement for more than 30 years. Mr. Dixon has had a minor color vision deficiency since birth, but this condition never affected his ability to perform his job duties.

11. In 1999, Mr. Dixon began working as a Special Security Officer ("SSO") in the Brooklyn federal court, Eastern District of New York.

12. Over the years, Mr. Dixon worked for a series of federal contractors under contract with the United States Marshal's Service. At the time of the events leading to this case, Inter-Con contracted with the United States Marshals Service ("USMS") to provide special security officers at federal courthouses, including the federal courthouses in Brooklyn, New York. Inter-Con and the USMS employed well-respected local law enforcement officers like Mr. Dixon.

13. Mr. Dixon held his SSO positions until he was terminated on March 23, 2015.

14. Before he started working as a SSO, Mr. Dixon was informed that he needed to undergo a physical examination. He took the physical, which included color vision testing, and

was thereafter put to work providing security services in the Eastern District of New York. At no time until his suspension and firing did defendants make any claim that his color vision interfered with this job. Mr. Dixon's color vision deficiency never affected his job in the more than thirty years he has served in law enforcement.

15. The USMS knew when it hired Mr. Dixon that he had a modicum of color discernment issues as demonstrated on the "Farnsworth" color vision test utilized by the government. In fact, every year for 14 years, the USMS had him tested for color vision, and each test revealed some color impairment. Each year, until 2014, it cleared him for duty.

16. Pursuant to Inter-Con's contract with the USMS, Inter-Con allowed the USMS to evaluate SSO medical documentation and decide when the individuals employed by Inter-Con should be suspended or terminated based on that documentation.

17. Inter-Con required Mr. Dixon to submit to an annual fitness for duty examination. Mr. Dixon complied with this requirement every year of his employment and was found to be fit for duty by the examining physician year after year.

18. There was never any issue regarding Mr. Dixon's qualification for the job. Mr. Dixon's work performance always demonstrated his ability to perform the essential functions of the job and evaluations of his job performance were consistently positive.

19. Mr. Dixon's last annual physical occurred on August 16, 2014, at a facility approved by Inter-Con. The results of the physical were normal and confirmed that Mr. Dixon was healthy and able to perform all the essential functions of his job.

20. The examining physician hired by Inter-Con confirmed Mr. Dixon's fitness for duty, and Inter-Con forwarded this examination to the USMS's medical contractor, Federal Occupational Health ("FOH").

21. FOH physician Dr. Richard Miller deemed Mr. Dixon's vision compromised and requested further documentation, which Mr. Dixon provided. Dr. Miller deferred a decision on Mr. Dixon's fitness for duty until further records were produced. In the meantime, without justification, Dr. Miller determined that Mr. Dixon should be suspended from working as a SSO. The USMS thereafter ordered his suspension.

22. For its part, Inter-Con summarily fired Mr. Dixon, instead of suspending him while the records were gathered. By the time FOH reviewed the additional documentation, Inter-Con had already fired him, so FOH discontinued processing his fitness for duty examination.

23. Inter-Con and the USMS made their decisions about Mr. Dixon's employment even though there was no indication that Mr. Dixon's vision in any way affected his ability to do his job or that the requirements were job-related and consistent with business necessity. The only rationale that Inter-Con gave for these invasive and burdensome medical information and testing requirements was fear about his color vision, fears that were belied by an ophthalmologist's report confirming his good vision and fitness for duty. Mr. Dixon provided the medical information and test results requested, to no avail.

24. Even though Inter-Con knew that Mr. Dixon had provided information and knew that USMS had not removed him from the contract, it unilaterally fired him based upon its perception of disability even though it had received his medical information and test results and knew that he was qualified.

25. Inter-Con did not cooperate with Mr. Dixon or the USMS It did not timely provide the medical information and test results to the USMS for evaluation, alert the USMS to

its previous error, or perform its own evaluation of Mr. Dixon's abilities. It simply fired him even before the USMS's deadline for supplying additional information.

26. Even though defendants knew that Mr. Dixon was eminently qualified to work as a CSO, they subjected him to illegal screening requirements and made illegal demands for medical information and testing in violation of the ADA, 42 U.S.C. §12112(b)(3), (b)(6), and (d)(4)(A). The government, a co-employer, controlled the vision standard that led to the separation of Mr. Dixon's employment. The contractor, Inter-Con, subjected him to this discrimination pursuant to its contractual arrangement with the USMS. The defendants are co-employers though Mr. Dixon was on Inter-Con's payroll. Inter-Con was Mr. Dixon's titular employer and the responsibility for the disability discrimination falls on Inter-Con. See 42 U.S.C. §12112(b)(2). The government, by the use of an unlawful vision standard and unlawful employment action in suspending Plaintiff from working, also violated the law. These illegal acts caused Mr. Dixon's damages, including lost wages and benefits and mental anguish.

COUNT I – Americans with Disabilities Act

27. Plaintiff repeats and realleges paragraphs 1 through 26 as if such paragraphs were fully set forth herein.

28. The plaintiff is a qualified individual with a disability. The plaintiff performed his job as a Special Security Officer with distinction, but was subjected to illegal screening requirements and medical examinations because of a disability, in violation of 42 U.S.C. §12112(b)(3), (b)(6), and (d)(4)(A). He was first suspended, then fired because of his disability, in violation of 42 U.S.C. §12112(a). He has an actual disability as he was assessed by Inter-Con. He was regarded as having a disability, based on Inter-Con's perception of his color vision. He

was discharged because of a record of a disability. Inter-Con's conduct violates the Americans with Disabilities Act, which prohibits discrimination in employment on the basis of disability.

## COUNT 2 - NYCHRL

29. Plaintiff repeats and realleges paragraphs 1 through 26 as if such paragraphs were fully set forth herein.

30. By the acts and practices described above, defendants intentionally discriminated against Mr. Dixon because of his disability, in violation of the NYCHRL, Administrative Code of the City of New York § 8-107(1)(a).

31. Defendant acted with malice and/or reckless indifference to Mr. Dixon's protected rights under the NYCHRL.

32. Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, emotional distress and other compensable damages as a result of defendants' discriminatory actions.

## COUNT 3 – REHABILITATION ACT

33. Plaintiff repeats and realleges paragraphs 1 through 26 as if such paragraphs were fully set forth herein.

34. The USMS's conduct violates the Rehabilitation Act, which also prohibits disability discrimination. The plaintiff is a qualified individual with a disability and was discriminated against because of such disability. The USMS cannot legally implement a medical test that tends to screen out those with disabilities as it did here, unless such a test is job related and justified by business necessity, which this test most certainly is not. Further, the USMS's additional obligation under the Rehabilitation Act not to utilize tests that tend to screen out those with disabilities unless they meet the business necessity standard applies whether or not the

plaintiff is disabled. 42 U.S.C. 12112(b)(6) and 29 U.S.C. 791 *et seq*. To the extent that the USMS enforces a rule that denies SSOs the opportunity to mitigate any perceived color discernment issues, that too is unlawful.

## DAMAGES

35. The damages suffered by the plaintiff include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

36. Further, because Inter-Con's actions were of the sort that render the imposition of punitive damages appropriate, the plaintiff is entitled to an award of these damages, which he seeks.

## RELIEF REQUESTED

WHEREFORE, plaintiff Alphonso Dixon respectfully asks this court to enter a judgment:

1. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act, the City Law, and the Rehabilitation Act;

2. Enjoining and permanently restraining these violations of law;

3. Directing the defendant to pay the plaintiff actual and compensatory damages that he suffered, past and future;

4. Directing Inter-Con to pay plaintiff punitive damages for its conduct in an amount as yet to be ascertained;

5. Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

6. Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

7. Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

8. Awarding plaintiff such other relief, legal or equitable, as may be warranted.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Mr. Dixon demands a trial by jury in this action.

Dated: November 26, 2018

Respectfully submitted,

/s/ Herbert Eisenberg
**HERBERT EISENBERG**
Eisenberg & Schnell, LLP
233 Broadway, Suite 2704
New York, NY 10279
heisenberg@eisenbergschnell.com
Telephone: 212-966-8900
Fax: 212-966-2505

**JOHN GRIFFIN, JR.**
Texas Bar No. 08460300
203 North Liberty Street
Victoria, Texas 77901
jwg@lawmgk.com
Telephone: 361-573-5500
Fax: 361-573-5040

**Katherine L. Butler**
Texas Bar No. 03526300
1007 Heights Boulevard
Houston, Texas 77008
kathy@butlerharris.com
Telephone: 713-526-5677
Fax: 888-370-5038

ATTORNEYS FOR PLAINTIFF